[L. A. No. 14385. In Bank.—May 17, 1934.]

HELEN T. VERDER, Respondent, v. AMERICAN LOAN SOCIETY (a Corporation) et al., Defendants; FRIEND W. RICHARDSON, as Building and Loan Commissioner, etc., Appellant.

Roscoe C. Andrews, Roland Tognazzini and Jean Wunderlich for Appellant.

MacDonald & Thompson and Kimball Fletcher for Respondent.

PRESTON, J.—In this cause, tried upon an agreed statement of facts, Honorable Henry M. Willis, the learned trial judge, filed, as the basis for his judgment, a written opinion which exhaustively, and we think correctly, treats the material questions presented by the record. We hereby make it the basis of our order affirming the judgment.

"This is an action to annul a deed of reconveyance by the trustee in a trust deed, and to restore to their former force and effect a note and trust deed securing the same belonging to plaintiff. The facts are stipulated in writing by plaintiff and defendant Friend W. Richardson as Building and Loan Commissioner of the State of California, in charge and control of the assets and business of defendant American Loan Society, pursuant to the Statutes of California relating to Building and Loan Associations. None of the other defendants have appeared herein, but service of summons has been made on the Mortgage company's receiver, the American Loan Society by its receiver, and the Title Guarantee and Trust Co.

"The essential facts for the purpose of decision herein are as follows: On March 12, 1930, plaintiff was the owner of a note for $12,000.00, secured by mortgage on Lot 16, Block 1, Lafayette Square, in the city of Los Angeles, executed by one Harold L. Shaw to American Mortgage Co. on May 13, 1925, and which note and mortgage had been sold and assigned by American Mortgage Co. to plaintiff and her husband on May 15, 1925. On March 12, 1930, plaintiff released said mortgage, and surrendered said note to the Mortgage Co., and in exchange therefor on March 14, 1930, received from American Mortgage Co. a note for $10,000.00, secured by a trust deed of the same property, executed on

March 13, 1930, by the then record owner, A. W. Kundert, in favor of the Mortgage Co., and by said Mortgage Co. assigned and delivered to plaintiff without recourse. The record owner, A. W. Kundert, was an employee of the Mortgage Co. and the property in question had been deeded to him by the Mortgage Co. on March 13, 1930, to be held by him in trust for the Mortgage Co., title having been acquired by the Mortgage Co. previously by trustee's deed upon a sale under a trust deed executed by the former owner, Shaw, but which was second and subordinate to the mortgage which had passed to the ownership of plaintiff.

"On January 9, 1931, Roy H. Fish, as Secretary and Treasurer of the Mortgage Co., requested plaintiff in writing to bring to the office of the company the said $10,000.00 note and all papers connected with the Kundert loan for repayment, and in response to which plaintiff, on January 12, 1931, delivered to the Mortgage Co. the Kundert note and trust deed for collection, and received a written receipt of the Company, signed by Roy H. Fish as Secretary-Treasurer, acknowledging receipt thereof 'for collection'.

"On January 15, 1931, the Mortgage Co. produced the note and the trust deed to the trustee named therein, viz., Title Guarantee and Trust Company, a defendant herein, and requested a reconveyance, and such trustee did, without plaintiff's knowledge or consent, on January 16, 1931, execute and deliver a reconveyance which was thereafter recorded on January 19, 1931.

"In the meantime, and prior to December 15, 1930, the American Loan Society had paid over and delivered to the Mortgage Co. as and for the purchase of mortgages and deeds of trust, a sum of money in excess of $400,000.00, for which, on such date, no mortgages or deeds of trust had been delivered. On this date, Kundert, who, on March 13, 1930, had become record owner of the property in question by deed from the Mortgage Co., but who held title in trust for the Mortgage Co., made application to the Loan Society for a loan of $10,000.00 on this property, which application was approved, and on December 15, 1930, he made and delivered to the Loan Society, his note for $10,000.00 with his deed of trust on this property to secure the same, which deed was recorded on January 14, 1931, two days prior to the execution and five days prior to the recordation of the

reconveyance under the former deed of trust owned by plaintiff and recently delivered to the Mortgage Co. for collection. No part of the plaintiff's note was paid by the maker, Kundert, nor by the Mortgage Co., but previously on October 30, 1930, the Mortgage Co. had placed on its books a purported credit in favor of plaintiff for the principal sum of her note and trust deed, without her knowledge or consent. Previously, on March 14, 1930, being the day following the date of conveyance of the title by the Mortgage Co. to him, Kundert made and delivered to the Mortgage Co. his deed conveying the title to said property, but which deed was not recorded, but held in the Mortgage Company's files until discovered by the Receiver for that Company, subsequently appointed on April 7, 1931, by the United States District Court.

"On October 2, 1931, the Loan Society filed its notice of default on the note and trust deed, last executed by Kundert in its favor on December 15, 1930, and thereafter a sale under such trust deed was had at which a deed was issued by the trustee to the Loan Society and recorded on February 8, 1932, in whom the record title still is vested, subject only to the official taking of all its assets and business by the Building and Loan Commissioner, defendant herein, on April 6, 1931, and who, without previous knowledge of any claim to the property by plaintiff has, since receiving such deed, expended in repairing, operating and protecting the property the sum of $1,830.55. It is further made to appear from the stipulation of facts that when plaintiff delivered her note and trust deed to the Mortgage Co., said Roy H. Fish informed her it would be some time before collection could be had, and that frequently thereafter she made inquiries of him concerning the collection, to which his reply was that the money had not been collected but was expected soon. That prior to the receivership proceedings of April, 1931, she reposed great faith and complete confidence in Roy H. Fish and in the Mortgage Co., and relied confidently on Fish's representations, and that prior to August 20, 1932, she had neither knowledge nor notice that Kundert was not the *bona fide* owner of the property, nor that the Mortgage Co. held Kundert's unrecorded deed of the property, nor that the Mortgage Co. had credited her on its books with any amount on account

of her delivery to it of her note and trust deed, nor that Kundert had executed the note and trust deed to the Loan Society, nor that a reconveyance had been made by the trustee under her trust deed.

"It further appears that numerous investors had become owners of various forms of investments, credits or instruments, issued to them by the Loan Society, in good faith and in confidence in the integrity of the Loan Society, prior to the taking over by the Commissioner. And that exclusive of about $9,000.00 in investments held by directors of the Loan Society, all members are creditors of the Loan Society in good faith and in no way responsible for anything done in the management or control of the Loan Society.

"It is further made to appear by the stipulation that at the time plaintiff delivered her note and trust deed to the Mortgage Co. for collection, and when the application by Kundert for the loan, and his deed to the Loan Society were made, and when the reconveyance under plaintiff's trust deed was made and recorded, the Mortgage Co. and the Loan Society had four officers in common as to person, viz., Frank N. Fish, President of both; Roy H. Fish, Secretary and Treasurer of both; George X. Hickerson, First Vice President of both, and A. O. Kelliher, Second Vice President of both companies; and that the said Hickerson acted and signed as appraiser on Kundert's application for said loan, and that George X. Hickerson, First Vice President of both companies, together with Frank N. Fish, President of both companies, A. O. Kelliher, Second Vice President of both companies, Roy H. Fish, Secretary-Treasurer of both companies, O. S. Holmes, Director of the Loan Society, Alexander Patterson and Chris Koch, Directors of both companies, all signed approval of said application.

"It is also made to appear that during all times here involved, the stock of the Loan Society comprised 1,000 shares, of which the Mortgage Co. owned 828 shares, the remaining 172 shares being held by the wife of George X. Hickerson, the Estate of Robert J. Gardner, deceased, and O. S. Holmes; and that all the directors of the Loan Society were also directors of the Mortgage Co., except that after October 8, 1930, Frank N. Gregory was a director of the Mortgage Co. only, and O. S. Holmes of the Loan Society only.

"Bearing in mind that the Mortgage Co. was under obligation to supply the Loan Society with $400,000.00 worth of mortgages on trust deeds, and that on October 20, 1930, the Mortgage Co. had made a false credit entry of $10,000.00 on plaintiff's account, it is significant that when these officers and directors, common to both companies, on December 15, 1930, approved Kundert's application for a loan of $10,000.00 on this property, they also approved the following condition in such application, viz., 'The money is to be paid out subject to the above conditions, as follows: The entire net proceeds of this loan to be used in repayment of present encumbrances now of record against the property herein described and held by the A. M. Co. of Calif.'

"On that date the trust deed of plaintiff was the encumbrance on record, and on that date Kundert made and delivered to the Loan Society his note for $10,000.00 secured by trust deed, pursuant to the approved loan agreement. Following which, on January 9, 1931, the Mortgage · Co. called in plaintiff's note and trust deed for payment and on January 12, 1931, received and receipted for the same for collection. On January 14, 1931, the new Kundert trust deed to the Loan Society was recorded and on January 9, 1931, the reconveyance under plaintiff's trust deed was recorded. Plaintiff's note, endorsed by her, together with her trust deed, was on January 15, 1931, delivered by the Mortgage Co. to the trustee, Title Guarantee and Trust Co., a defendant herein, when request for reconveyance was requested. This leads to the conclusion that the note of plaintiff is still in the possession of the Title Co. as trustee, and that it is not paid, and is a subsisting obligation of its maker, but with its original security, the trust deed, wiped out on the record by the reconveyance. Instead of plaintiff having record security for her Kundert note of $10,000.00, in the form of a trust deed on the lot in question, the Loan Society received a trust deed on such lot to secure its Kundert note of $10,000.00, which trust deed it has caused to be enforced for default, resulting in legal title to the lot becoming vested in the Loan Society, free of any record encumbrance in favor of plaintiff.

"Another significant fact stipulated, and emphasized in argument by defendant, is that after the Federal Receiver

was appointed for the Mortgage Co. in April, 1931, plaintiff, on November 18, 1931, filed a claim with said Receiver, as part of which she included this Kundert note and trust deed in an item reading: 'Securities delivered for collection on which payment has not been made . . . $10,000.00,' with a description thereof and a copy of the receipt therefor given her by the Mortgage Co.

"Finally it is stipulated that both the Mortgage Co. and the Loan Society are insolvent, and their assets, respectively, not sufficient to pay their debts, the Mortgage Company's assets being in the hands of a Federal Receiver, and the Loan Society's assets in the hands of the Building and Loan Commissioner, as a statutory receiver for liquidation under the state law.

"Upon this state of facts plaintiff claims that 'basically plaintiff's case rests upon the theory that the owner may always recover stolen property'. It is argued that the knowledge of the Mortgage Co. was knowledge of the Loan Society through the unity of the officials and directorate of the two companies; and that by the fraudulent acts of such common officers, plaintiff was deprived of her security, and the Loan Society enabled to acquire its substitute or successor security, which later was transformed into record title in fee by process of trustee's sale.

"Defendant, the Building and Loan Commissioner, concedes the general rule that the owner may recover from innocent third parties property which has been transferred by an agent in violation of his duty to his principal, but claims an exception to the general rule in favor of the innocent third party in cases where the agent is invested with apparent authority to dispose of the property, and held out by the principal as possessing such authority, in which cases, upon wrongful transfer to an innocent party, redress will be denied the owner against such innocent party, notwithstanding the agent's wrongful act, for the reason that 'where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer'. (Civ. Code, sec. 3543.)

"That neither the rule stated by plaintiff nor its exception as stated by defendant are applicable in this case is manifest under the facts. Neither the note nor trust deed of plaintiff was transferred by the Mortgage Co. to another,

nor has the Loan Society ever received the same. The Mortgage Co. wrongfully caused a reconveyance under the trust deed to be made and recorded, and delivered the note to the trustee with the trust deed, solely for the purpose of reconveyance, and such trustee, Title Guarantee and Trust Co., defendant herein, presumably still has possession of both. What the Loan Society received was another and different note and trust deed, the only thing in common to the two items of property being the real property described in each trust deed.

"Whatever of relief plaintiff may be entitled to under these facts, must be predicated on broader grounds of equity and upon the establishment of what may well be called a conspiracy to defraud her of her property, participated in by both the Mortgage Co. and the Loan Society as voluntary actors with knowledge of the wrongful purpose and joint participation in the acts committed to accomplish such purpose.

"That there was such a conspiracy chargeable against both companies, as legal entities, there can be no doubt after consideration of all the facts. The knowledge of its agents acquired while acting for and on behalf of the Mortgage Co. must be imputed to that company. Likewise the knowledge of its agents acquired while acting in its behalf, must be imputed to the Loan Society. The agents of each company being the same, acting at the same instant in dual capacities in the transaction of their principals' business *inter sese*, were carriers of such knowledge to both principals synchronously, with the result that each company principal is charged with all the knowledge and acts of its agents, gained or performed in transacting the business of the respective companies. (*McKenney* v. *Ellsworth*, 165 Cal. 326 [132 Pac. 75]; *Williams* v. *Hasshagen*, 166 Cal. 386, 393 [137 Pac. 9]; *National Bank of San Mateo* v. *Whitney*, 40 Cal. App. 276 [180 Pac. 895]; *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal. App. (Supp.) 783 [288 Pac. 29].)

"The state of facts does not present a case where an agent gains knowledge in the commission of acts in which he has an interest hostile and adverse to his principal, which furnishes basis for an exception to the general rule, announced in the above-cited cases, but clearly herein all the

acts of the common agents of both companies were conceived, arranged and performed for the benefit of the respective companies—not for the agent himself—and each company derived and retained the benefit of the acts in question. The Mortgage Co. received a credit of $10,000.00 on its $400,000.00 advance, and the Loan Society received a note for $10,000.00, secured by a trust deed on the property, of which plaintiff was deprived as security.

"From the foregoing it follows that in so far as the Mortgage Co. and the Loan Society, as corporate entities, are concerned, both had knowledge of the fraud perpetrated on plaintiff, both were recipients of benefit therefrom, and both, by their legal and corporate agents, participated therein.

"If the Loan Society were free and doing business under the law and in regular course, this conclusion would determine the rights and duties of the parties herein, but, it appears that subsequent to the time when this fraud was accomplished, the Loan Society was taken over under the law by the defendant Commissioner for liquidation, and he now claims such a change of status in the affairs affecting the rights and duties previously existing between plaintiff and the Loan Society has occurred in the eyes of the law, that, notwithstanding the culpability of the Loan Society, the investors therein, as creditors thereof, have in turn become innocent third parties in respect to plaintiff and her claims; that the Commissioner, as a liquidating receiver, took the assets of the Loan Society, including the property here involved, under the law which operated as an equitable attachment, fixing and determining the rights of all persons claiming to share in such assets as of the date of taking. And that having so taken prior to the commencement of an action herein by plaintiff, the rights of innocent creditors of the Loan Society are paramount to those of plaintiff, and may be asserted by such receiver, even though they would not be available to the Loan Society. And here again, the defendant Commissioner claims that there attaches and becomes operative in favor of the creditors of the Loan Society, whom he represents as receiver, the rule or maxim in equity that if one of two innocent parties must suffer through the fault of a third, he,

by whose conduct the fraud was made possible, should bear the loss.

■ "It seems to be established by the weight of authority, that while an operating receiver takes the assets of a corporation subject to all equities outstanding against it, a liquidating receiver acts in the dual capacity of representing the corporation, as such, and also its creditors, and that in the latter capacity, he may claim rights and advance defenses, not available to the corporation.

"The authorities, however, do not extend this claim to include all cases where a loss will be sustained by creditors if a third party's claim is allowed against the insolvent, but only to include such cases as where the dealings of the insolvent were in fraud of the creditor's rights, or where the dealings in question were had directly between the third party claimant and the insolvent corporation. All of the authorities cited by defendant on this phase of the case fall into one or the other of such classes. All deal with positive acts either of the insolvent in fraud of its creditors, or in direct dealings with the claimant, and in them it is announced that the receiver may interpose defenses, such as illegality, estoppel, laches and other equitable defenses, or assert claims on behalf of the innocent creditors, as against such third party, which the corporation he represents may not be permitted to do.

■ "In the case at bar, plaintiff had no part in the fraudulent dealings. She was innocent of knowledge of their transaction or existence until August 20, 1932. Nothing can be charged to her by way of act or conduct in fraud of the creditors. By the fraud here in question, her note has been delivered into the hands of the Trustee named in her trust deed, and her trust deed security has been destroyed by a reconveyance by that Trustee. She seeks to recover nothing from the assets of the Loan Society, but from the Trustee she seeks her note and trust deed, and from the court a decree annulling the deed of reconveyance by that Trustee, and a reinstating of her trust deed to its former status, both as a subsisting instrument and on the record. It is true if such is done, the title now held by the Loan Society will become burdened with such trust deed, and to that extent, its creditors will suffer a prospective loss. This loss, however, would not be direct

but consequential, and therefore could not be made amenable to the rule in equity relating to allocation of loss between two equally innocent parties, first, because plaintiff's rights cannot be denied simply because some third party will suffer consequentially by a judgment against one who has violated such rights, and second, because it cannot be said that plaintiff in anywise was at fault or negligent in leaving her note and trust deed with the Mortgage Co. for collection.

"In connection with this latter proposition, it is claimed by defendant that plaintiff was guilty of negligence in endorsing and delivering her note to the Mortgage Co. for collection, thus furnishing that Company with the indicia of title upon which a purchaser in good faith or other innocent third party might rely, with the result of an estoppel arising against plaintiff. Upon examining the Kundert application for a loan, which in fact was the Mortgage Company's application by proxy, it is found recited therein in section 34 that the Loan Society is 'ordered to pay full amount of the A. M. Co. of Calif's. demand to release present encumbrances now · of record against the above described property *and charge this loan account'*. And in section 44 it is recited that the proceeds of the loan are to be used 'in repayment of present encumbrances now of record against the property herein described and held by the A. M. Co. of Calif.'.

"The officers and directors of the Mortgage Co. knew that the plaintiff held the encumbrance, and knew of the loan account. The same officers as officers and directors of the Loan Society, who examined and passed on this loan application, knew the same things, and therefore the Loan Society knew them, and when the loan was approved and the note and trust deed accepted, the Loan Society was charged with full knowledge of the true status of the plaintiff's note and trust deed, and that it was then owned by plaintiff. Furthermore, when the Loan Society trust deed was recorded, the former trust deed of plaintiff was still of record. While it may be claimed that plaintiff by endorsing and delivering the note to the Mortgage Co. for collection made it possible for the Mortgage Co. to commit fraud, nevertheless it must also be determined that the Loan Society was aware of plaintiff's ownership of the note and

trust deed and that it was superior to its newly recorded trust deed. And by directing that such previous loan should be released and charged to the Mortgage Company's loan account, it knew that no money was to be passed by the Loan Society to the Mortgage Co. with which to discharge plaintiff's note.

"In respect to the defendant's claim that the maxim in equity above referred to enlarges the field of defense over that defined by section 3543 of the Civil Code wherein the basis of the defense is negligence of the plaintiff—not that plaintiff made it possible for the fraud to be committed, in all the cases cited from California, negligence of plaintiff is found as the basis of the estoppel and the ground of denying relief.

■ "It is also claimed by defendant that plaintiff, by her action herein, is in effect, seeking to rescind the endorsement and delivery of the note to the Mortgage Co., and that such can not be done after insolvency of the Mortgage Co., and cites many cases in support of its claim. It is sufficient to say, after examining all the authorities cited, that, while there is some conflict among authorities, it is the declared law in California that the right to rescind is not to be denied on the mere fact of insolvency of the corporation but for the reason that the party seeking rescission has participated in the management of the insolvent corporation, or for some other particular cause such as would create an estoppel, or under some other doctrine analogous to equitable doctrine of laches. (*People* v. *California etc. Trust Co.*, 19 Cal. App. 414, 418 [126 Pac. 516].) Plaintiff herein falls within neither of these classes. [*Burningham* v. *Burke*, 67 Utah, 90 (245 Pac. 977, 46 A. L. R., p. 466)— this authority inserted by this court.]

■ "As creditors of the Loan Society, the investors whom the defendant Building and Loan Commissioner represents, and for whom he claims a status of innocent third parties, were all creditors prior to the date of the perpetration of the fraud herein. There is no evidence in the stipulation of facts from which it could even be inferred that any one of them became an investor after January 19, 1931, the date of recordation of the reconveyance under plaintiff's trust deed. The Mortgage Co. went into the hands of a Federal Receiver on April 7, 1931, and the

Loan Society was taken over by the statutory receiver on April 6, 1931. It must be concluded then that none of these creditors parted with anything upon the assumption that the Loan Society was the owner of the new note and trust deed, and that they constituted part of the assets of the Loan Society. On the contrary, it appears that these creditors have at present the benefits of the fraud by which plaintiff lost her security, and by which the Loan Society gained the property in question, and that they suffered no detriment by reason of reliance upon any acts of plaintiff in endorsing and delivering her note to the Mortgage Co. The Building and Loan Commissioner holds property free and clear of plaintiff's trust deed, under a state of facts which neither he, as receiver, nor the creditors of the Loan Society are entitled in equity or good conscience to hold and keep free and clear as against the burden of plaintiff's trust deed. (*Dox* v. *R. E. Lomax Co.*, 29 Cal. App. 718, 721, 722 [156 Pac. 874].)

██ "Defendant also claims that by filing her claim with the receiver of the Mortgage Co. covering the amount of the note she delivered to that Company for collection, plaintiff has elected her remedy and should be now precluded from claiming this, a different one.

"The Federal Receiver was appointed on April 7, 1931, within three months after plaintiff delivered her note for collection. During these months, it was repeatedly represented to her that the note was not yet collected. Without any knowledge that her note had been delivered to the Trustee and that the Trustee had reconveyed, she presented a claim to the Mortgage Co. receiver on November 18, 1931, for $21,000.00, comprising items, among which she recites: 'Securities delivered for collection on which payment has not been made . . . $10,000.00', accompanied by a copy of the Mortgage Company's receipt. It was not until August 20, 1932, that she learned of the delivery of her note to the Trustee and of the reconveyance and its attendant fraud. On September 28, 1932, she commenced this action. The filing of the claim was in the ordinary course of receivership proceedings, and was equivalent only to a demand for the securities, and can not be held in law to be an election of remedy which would preclude the party from subsequently asserting another. ██ To constitute a bar,

the two remedies must be inconsistent on the same state of facts, and knowledge of the existence of the facts must be present. Furthermore, the doctrine of election of remedies is applicable only where the remedy first sought is a real remedy available to the plaintiff. If the plaintiff is mistaken and undertakes to avail herself of a remedy to which she is not entitled, she is not prevented from subsequently availing herself of the one to which she is entitled under the facts of the case. The doctrine is generally regarded as an application or extension of the law of estoppel, and to make it applicable there must be present a showing of such inconsistency of position on a given and known set of facts as to afford a bar by the election of one over the other in the first instance. (10 Cal. Jur., Election of Remedies.)

 "Since taking title to the property here in question, the Commissioner has expended a substantial sum of the Loan Society's money in repairs and betterments, besides the money expended in acquiring title through the enforcement of the trust deed. This is asserted as an additional equitable reason why plaintiff should be denied relief, with suggestion that such amount should be repaid should plaintiff prevail. Plaintiff opposes this and demands an accounting for rents collected by the Receiver. It seems clear that neither contention is sound. What defendant expended was as owner on its own property for its own benefit, and in return it has received the rents from the property. Plaintiff certainly has no claim whatever over the rents, nor is there any method created by law, nor any scheme in equity by which plaintiff's rights or interest in the property may be subjected to this claim. It did not arise through plaintiff's fault, and cannot be made a lien against the trust deed interest of plaintiff nor upon the property. If there exists any loss after crediting the rents against the cost of maintenance and repair by the defendant, it must of necessity be borne by defendant.

"From the foregoing it follows that plaintiff is entitled to recover possession of her note and trust deed from the Title Company upon demand therefor, and for a decree annulling the request for reconveyance and the reconveyance executed by the Title Company and recorded in the office of the County Recorder, and for a decree establishing

plaintiff's note as a valid and subsisting obligation, and that the trust deed securing said note is a valid and subsisting encumbrance upon the real property described therein, and is prior and superior to the trust deed encumbrance in favor of the Loan Society and to the Trustee's deed conveying title to the Loan Society, and superior to all title or interest of the Loan Society in and to said property.''

The demand of plaintiff is not such a ''claim'' that it must be first presented to the Commissioner pursuant to section 13.16 of the California Building and Loan Act (Deering's General Laws, vol. 1, pp. 509, 510, Act 986), before an action may be founded upon it. See *Bollinger* v. *Wright*, 143 Cal. 292 [76 Pac. 1108], *Newport* v. *Hatton*, 195 Cal. 132 [231 Pac. 987], and *Wahlefeld's Estate*, 105 Cal. App. 770 [288 Pac. 870].

The judgment is affirmed.

Langdon, J., Shenk, J., and Waste, C. J., concurred.