**In re C.P.C. DEVELOPMENT COMPANY NO. 5, a joint venture, Debtor.**

**KINGSWAY REVOCABLE TRUST, Plaintiff,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, in its corporation capacity and is conservator for Mt. Whitney Savings and Loan Association and First American Title Insurance Corporation, Defendant.**

**Bankruptcy No. LA87–03376RR.**
**Adv. No. LA87–1894RR.**

United States Bankruptcy Court, C.D. California.

April 16, 1990.

**638**

Peter Sitkin, for plaintiff, Kingsway Revocable Trust.

H. Thomas Hicks, of Graham & James, Newport Beach, Cal., for defendant, FDIC.

## REVISED MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

ROBIN L. RIBLET, Bankruptcy Judge.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(1). The dispute before the Court concerns a motion for summary judgment brought by defendant Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Mt. Whitney Savings and Loan Association ("Mt. Whitney"). Plaintiff Kingsway Revocable Trust ("Kingsway"), a trust comprised of over 400 individuals and pension plans, holds a promissory note in the amount of $1.8 million secured by a second deed of trust on a condominium project owned by the debtor, C.P.C. Development Company No. 5 ("CPC"). By its Complaint, Kingsway seeks *inter alia*, equitable subordination of the first deed of trust held by FSLIC on the same property based on alleged fraudulent conduct by Mt. Whitney. Bankruptcy Code § 510(c) is the statutory basis for Kingsway's Complaint.

### FACTS

The dispute arose out of a failed real estate development project, consisting of a planned 72–unit condominium complex in the City of Morro Bay, California. Kingsway was the former owner of the development property. Kingsway sold the property in February 1985 to Dizine Development Company ("Dizine") for $4.2 million pursuant to an option agreement entered into in October 1984. The terms of the purchase provided for $2.4 million in cash and the balance of $1.8 to be financed by Kingsway under a promissory note secured by a deed of trust on the property. The option agreement further specified that Kingsway's deed would be subordinated to a construction loan on the property when and if a lender was obtained to finance the project.

In January 1985, Dizine obtained a construction loan from Mt. Whitney for $5,741,000 secured by a deed of trust on the property to finance the construction of the first 24 units of the project. Although Mt. Whitney was to fund the project, the loan was placed through its subsidiary, Broadstreet Mortgage Bankers ("Broadstreet") and then assigned to Mt. Whitney. Pursuant to the option agreement between Dizine and Kingsway, Kingsway's purchase money deed of trust was subordinated to the Mt. Whitney construction loan and deed of trust. Shortly after the sale was consummated, Kingsway consented to assignment of the project from Dizine to the debtor, C.P.C. Development Co. No. 5 ("C.P.C."). C.P.C was created as a joint venture between Dizine and Crown Point Corporation, another Mt. Whitney subsidiary. Kingsway alleges that the relationships among Mt. Whitney, Broadstreet and Crown Point Corporation were not disclosed.

Meanwhile, in March 1985, Mt. Whitney was the subject of a cease and desist order issued by the State of California. The order required that Mt. Whitney's officers and directors make a $4.5 million capital infusion into Mt. Whitney and that the officers pay back a $500,000 unsecured loan given by Mt. Whitney to purchase Broadstreet. Neither the capital infusion nor the repayment were accomplished and the FSLIC was appointed conservator of Mt. Whitney Savings and Loan.[1]

As to the condominium project, Mt. Whitney disbursed the construction loan to the debtor and the first 24 units were completed in the winter of 1985. On February 1,

---

1. FSLIC was subsequently appointed receiver of Mt. Whitney Savings and Loan in February 1988.

1986, the debtor defaulted on the construction loan, and the FSLIC's Notice of Default was recorded on February 23, 1986. Kingsway recorded a Notice of Default on October 23, 1986. The debtor filed its chapter 11 petition on February 24, 1987, which operated to stay the foreclosure proceedings.[2] In May 1987, during the course of the debtor's chapter 11 proceedings the bankruptcy court approved a stipulation between the FSLIC and the debtor granting FSLIC, as conservator for Mt. Whitney, relief from the automatic stay in order to conduct a nonjudicial foreclosure sale of the property, which would have extinguished Kingsway's second deed of trust. In September 1987, Kingsway brought its Complaint against the FSLIC in its corporate capacity as conservator for insolvent Mt. Whitney to enjoin the foreclosure sale as well as to subordinate the first deed of trust under Bankruptcy Code § 510(c). A preliminary injunction issued from the court on October 15, 1987, restraining the FSLIC from selling the subject property.

The alleged basis for Kingsway's equitable subordination cause of action is that Mt. Whitney fraudulently induced it to subordinate its purchase money deed of trust by failing to disclose material facts, including the illegal and improper relationship between Mt. Whitney and its subsidiaries, Broadstreet, and Crown Point, and the severe financial instability of these entities. In July 1989, defendant FSLIC filed a motion for summary judgment based on two theories: 1) that federal common law under the Supreme Court decision of *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), shielded the FSLIC from liability for fraud in the inducement and 2) that, as a matter of law, any inequitable conduct by Mt. Whitney could not be attributed to the FSLIC, thus negating Kingsway's equitable subordination claim.

In opposing the FSLIC's motion, Kingsway argued that the FSLIC waived the affirmative defenses of *D'Oench, Duhme* and nonattribution by raising the defenses

for the first time on summary judgment two years after the Complaint was filed. Before the court rendered its decision, Congress responded to the nationwide savings and loan crisis by enacting the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Pub.L. 101–73, 103 Stat. 183. FIRREA abolished the FSLIC, and the Federal Deposit Insurance Corporation ("FDIC") became manager of the FSLIC Resolution Fund, the repository for all pre-January 1, 1989 assets of the FSLIC. Based on FIRREA, the FDIC succeeded to the FSLIC's position and supplemented the summary judgment motion, arguing that § 217 of FIRREA barred Kingsway's claims.

## ISSUES

The following issues are presently before the court: 1) whether FIRREA and § 217 thereof may be applied retroactively to the facts in this case; 2) whether a "secret agreement" within the meaning of *D'Oench, Duhme* encompasses fraud in the inducement based on material nondisclosures; 3) whether the FSLIC (now FDIC) may be liable for the alleged bad acts of Mt. Whitney for purposes of equitable subordination under Bankruptcy Code § 510(c); and 4) whether the FSLIC (now FDIC) waived its affirmative defenses of *D'Oench Duhme* and nonattribution by raising the defenses over two years after the Complaint was filed.

## DISCUSSION

The granting of summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to prevail as a matter of law. *RFD Publications, Inc., v. Oregonian Publishing Co.*, 749 F.2d 1327, 1328 (9th Cir.1984). Section 217(4) of FIRREA amends 12 U.S.C. § 1823(e), section 13 of the Federal Deposit Insurance Act. Section 1823(e) protects the FDIC from unwritten or "secret" agreements against the interests of the FDIC. Section 217(4) provides as follows:

**2.** Upon motion of the United States Trustee heard on August 29, 1989, the case was converted to chapter 7 pursuant to this court's order entered September 18, 1989.

(e) AGREEMENTS AGAINST INTERESTS OF CORPORATION.—No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and,

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

■ Section 1823(e) essentially codified and broadened the protection afforded the FDIC by the U.S. Supreme Court's decision in *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench Duhme*, the FDIC acquired a note from a failed bank through purchase and assumption and brought suit against the maker for payment. The maker of the note asserted the defense of failure of consideration based on an undisclosed agreement with the bank that the note would not be called for payment. The Court held that a secret agreement could not be a defense to payment of the note when "the maker lent himself to a scheme or arrangement whereby the banking authority ... was or was likely to be misled." *Id.* at 460, 62 S.Ct. at 681.

In most instances courts have applied *D'Oench Duhme* to bar a defense to payment of a note by its maker. However, at least one court has held that *D'Oench Duhme* precluded a homeowner from arguing that a deed of trust purchased by the FDIC was invalid when the FDIC sought to foreclose under the deed of trust. *Temp-lin v. Weisgram*, 867 F.2d 240 (5th Cir. 1989) (parties entered into a side agreement in which a third party rather than the note maker and deed of trust giver were liable under the note and trust deed).

The *D'Oench Duhme* doctrine protects the FSLIC as well as the FDIC. *FSLIC v. Two Rivers Associates, Inc.*, 880 F.2d 1267, 1274–75 (11th Cir.1989). However, § 1823(e), prior to its amendment by § 217 of FIRREA, protected only the FDIC in its corporate capacity. [*See FDIC v. McClanahan*, 795 F.2d 512, 516 (5th Cir.1986)]. Section 217(4) makes clear that the protection set forth in § 1823(e) now applies to assets that the FDIC acquires as receiver as well as assets that it acquires in its corporate capacity. [House Report No. 101–54(I), H.R. 1278, 101st Congr. p. 335 (1989) U.S.Code Cong. & Admin.News 1989, p. 86]. The FDIC, as receiver for Mt. Whitney, argues that with the enactment of FIRREA and its substitution into this case as defendant, §§ 1823(e) and 217 are applicable to bar Kingsway's claim for equitable subordination. Since the question of FIRREA's retroactive application becomes meaningful only if there is a "secret agreement" on which Plaintiff's claim relies, the court addresses first whether such an "agreement" exists in this instance.

Despite the U.S. Supreme Court's expansion of the definition of "agreement" in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the court does not find an agreement under the facts presented here. *Langley* held that the word "agreement" in § 1823(e) encompassed unrecorded representations, the truth of which was a condition to payment on a note. *Id.* at 92–93, 108 S.Ct. at 401–02. In *Langley*, the makers of a note alleged as a defense to the FDIC's suit for payment that their purchase of land and the note had been obtained by the bank's misrepresentations. The bank allegedly overstated the amount of land and mineral acres in the tract, and falsely stated that there were no mineral leases on the property. There was no mention of the alleged misrepresentations in the makers' records or the bank's records. In finding a "secret

agreement" in the makers' failure to record their version of the agreement for purchase of the land, the Supreme Court relied on the principles set forth in *D'Oench Duhme*. The Court concluded that the makers had lent themselves "to a scheme or arrangement likely to mislead the banking authorities" as in *D'Oench Duhme*, since they failed to protect themselves by assuring that their agreement was approved and recorded in accordance with the statute. *Id.* at 94, 108 S.Ct. at 402–03.

In contrast to *Langley*, Kingsway here alleges fraud in the inducement based on nondisclosures by Mt. Whitney Savings and Loan. In *Langley* the bank made affirmative representations concerning the land to which the Plaintiff agreed for purchase of the property in that case. Here, Kingsway plainly could not agree to nondisclosures of which, by definition, it had no knowledge. More importantly, Kingsway did not participate in or lend itself to a fraudulent scheme because there was no way for it to record something which was unexpressed and unknown to it. In addition, there are no facts suggesting that Kingsway should have known about Mt. Whitney's financial instability or illegal dealings. Even if, as the FDIC argues, the financial stability of Mt. Whitney could be construed as an implied condition under *Langley*, there are no facts before the court to suggest that Kingsway ever considered such a condition but failed to express it either verbally or in writing.

The facts here fall within the case of *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974). In *Meo* the Court of Appeals in the 9th Circuit held that the maker of the note in that case did not "lend himself to a scheme or arrangement ... likely to mislead the banking authorities" when he was unaware of the bank's improper execution of a stock sale agreement. *Id.* at 792. There the maker had executed a note in favor of the bank in order to buy 1000 shares of the bank's common stock, a transaction, the illegality of which he was unaware.[3] The bank instead issued 1000 voting trust certificates to the maker, which the maker never saw because the bank held the certificates as security for the loan. When the bank became insolvent and the FDIC brought suit on the note, the maker argued failure of consideration. In finding that *D'Oench Duhme* did not apply, the Court of Appeals emphasized that the maker had not participated in or made a secret agreement since he neither had "knowledge ... of the failure of consideration until after the bank closed" nor had been negligent in failing to discover the wrongful execution of the stock. *Id.*

As in *Meo*, the plaintiff here did not participate in a fraudulent scheme because it had no knowledge of the facts withheld by Mt. Whitney Savings and Loan.[4] Since this court finds that there was no secret agreement to which the principles of *D'Oench Duhme* or § 1823(e) may attach, neither defense may be applied to bar Kingsway's claim for equitable subordination and fraudulent nondisclosure. Accordingly, the issue of whether FIRREA and § 217, amending § 1823(e), may be applied retroactively to this case need not be addressed.

■ Next, the FDIC argues that the alleged bad acts of Mt. Whitney cannot be attributed to the FSLIC (and now the FDIC) for purposes of equitable subordination, under Bankruptcy Code § 510(c). The Ninth Circuit Bankruptcy Appellate Panel in *In re Pacific Express, Inc.*, 69 B.R. 112, 116 (9th Cir.BAP 1986) adopted the three-prong approach articulated by the Fifth Circuit in *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977), for determining whether a claim should be subordinated under § 510

---

3. A bank may not loan money on its own stock. 12 U.S.C § 83.

4. Similarly, California state courts hold that a plaintiff is not estopped from recovering against a bank's receiver where a plaintiff had no knowledge of, and therefore did not participate in a bank's fraudulent scheme. (*See, Camerer v. California Savings & Commercial Bank of San Diego*, 4 Cal.2d 159, 48 P.2d 39 (1935), (plaintiff was allowed to recover his bonds from a bank's receiver where he was unaware that the bank was using his bonds to inflate its assets); *Verder v. American Loan Society*, 1 Cal.2d 17, 32 P.2d 1081 (1934), (plaintiff not estopped from bringing an action to set aside a reconveyance of its deed of trust, and to regain the deed's status as a first lien where plaintiff was not at fault).

of the Bankruptcy Code. The three-prongs are as follows:

(i) The claimant must have engaged in some type of inequitable conduct;

(ii) The conduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

We are concerned primarily with the first prong which requires some inequitable conduct on the part of the defending claimant.

Under the facts here, the FSLIC (and later the FDIC) was a transferee innocent of any misconduct by Mt. Whitney. The FDIC's position is that the alleged bad acts of Mt. Whitney cannot be attributed to the FSLIC/FDIC as an innocent transferee, and therefore as a matter of law, Kingsway has no claim against it for equitable subordination. Neither the parties' nor the court's research has found any reported case which has decided the question of whether inequitable conduct under § 510 may be imputed from one entity to another where the latter is an innocent transferee. The FDIC cites two Fifth Circuit cases, *Matter of CTS Truss, Inc.*, 859 F.2d 357 (5th Cir.1988), *modified on reconsideration*, 868 F.2d 146 (1989) and *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135 (5th Cir.1987), to support its contention.

*Missionary Baptist*, for present purposes, is instructive only to a limited extent. In *Missionary Baptist* the Fifth Circuit considered whether fraud by a person in control of the debtor could be imputed to that person's partner and business associate. In remanding the case back to the bankruptcy court for more specific findings as to the claimant's alleged inequitable conduct, the Court of Appeals stated that equitable subordination against the partner "could be supported on the basis of identifiable inequitable conduct on the [partner's] part." *Id.* at 1146. Such "identifiable" conduct could be ascertained by looking into the partner's connection and involvement in the transaction forming the basis for its claim against the debtor. *Id.* Thus, *Missionary Baptist* established that inequitable conduct may be imputed where the claimant was involved in, if not directly responsible for, the bad acts.

In *CTS Truss*, the Fifth Circuit again addressed whether inequitable conduct could be imputed, this time as to an innocent transferee, the FDIC. The Court ultimately did not decide the question because it concluded on narrower grounds that *D'Oench Duhme* and 11 U.S.C. § 1823(e) protected the FDIC from the plaintiff's claim of subordination. The Court did, however, discuss imputation to the FDIC, stating that "policy considerations argue against imputing the bank's alleged inequitable conduct to the FDIC." 859 F.2d at 360. On reconsideration, the Court of Appeals deleted that portion of the opinion concerning imputation to the FDIC. 868 F.2d at 147. As a result, *CTS Truss* is also of limited help in the present case.

This court is of the opinion that the alleged bad acts of Mt. Whitney may be imputed to the FSLIC/FDIC for purposes of equitable subordination. In reaching this conclusion, the court relies on the principles of a holder in due course and the race-notice statutes under California law.[5]

With respect to a promissory note, in California a holder in due course does not "become a holder in due course of an instrument ... by purchase of it at judicial

---

**5.** This Court's application of state law rather than federal common law is supported by *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.1982). In *Gunter,* the Eleventh Circuit concluded, first, that 12 U.S.C. § 1823(e) did not apply where there was no agreement under the facts of that case. *Id.* at 867. The court then went on to hold that as a matter of federal common law, the FDIC, in its corporate capacity, has a complete defense to state and federal fraud claims when it acquires a note in a purchase and assumption transaction, for value and in good faith without actual knowledge of the fraud at the time of acquisition. *Id.* at 872–73. The court stated that in other commercial contexts, such as when the FDIC acquires notes in its capacity as receiver, the FDIC "should not be relieved from the ordinary operation of state law." *Id.* The court limited its holding to purchase and assumption transactions in part because "the protection from unknown fraud is available only to the extent the FDIC pays value for the note and thereby jeopardizes a portion of the insurance fund." *Id.* The 11th Circuit

sale or by taking it under legal process." [Cal.Comm.Code § 3302(3)(a) ]. Accordingly, the FSLIC normally would take a note subject to all claims and defenses held by its predecessor in interest, except under the limitations imposed by the U.S. Supreme Court in *D'Oench Duhme. British Columbia Investment Co. v. FDIC*, 420 F.Supp. 1217, 1224 (S.D.Calif.1976); Cal. Comm.Code § 3306.

Similarly, in situations where, as here, a deed of trust is transferred, a holder of a deed of trust is subject to all claims to the deed unless the holder is a bonafide purchaser for value who takes without notice. *See*, Cal.Civil Code § 1214. The FSLIC acquired the deed of trust here not by purchase and assumption but by transfer through legal process. Under such a fact situation the FSLIC would not be a purchaser for value within the meaning of Civil Code § 1214. Accordingly, the FSLIC/FDIC as holder of the Mt. Whitney deed of trust should be subject to Kingsway's claim for equitable subordination where *D'Oench Duhme* and/or 12 U.S.C. § 1823(e) do not operate to bar its claim.

Given the finding that neither the defense of *D'Oench Duhme* nor nonattribution applies to the facts presented here, it is not necessary to reach the question of whether the FSLIC waived these defenses by failing to raise them in a timely fashion.

For the reasons stated above, the motion for summary judgment is denied.

recently revisited *Gunter* in *FSLIC v. Two Rivers Associates, Inc.*, 880 F.2d 1267 (11th Cir.1989). The court held in *Two Rivers* that given an unrecorded agreement between the parties, *D'Oench Duhme* applied to bar plaintiff's claim against the FSLIC, citing several cases in which *D'Oench Duhme* has been applied to protect the FSLIC both as receiver and in its corporate capacity. *Id.* at 1276. Defendant argued that *D'Oench Duhme* should not apply when the FSLIC is acting as receiver rather than in its corporate capacity, presumably on the basis of *Gunter.* The court stated that *Gunter* did not preclude application of *D'Oench Duhme* because, contrary to *Gunter,* federal policy protects the FDIC whether it is acting as receiver or

in its corporate capacity. *Id.* at 1277. However, *Gunter* addressed the issue of federal policy in the context of whether the FDIC was protected when it acquired a note in a purchase and assumption transaction, not with respect to *D'Oench Duhme* or § 1823(e). Indeed, neither 1823(e) nor *D'Oench Duhme* applied under the facts in *Gunter.*

Therefore, there is nothing in *Two Rivers Associates, Inc.* which compels this Court to alter its position that the FSLIC (now FDIC) should not be relieved from the operation of state law, where as here, the FSLIC acquired the note as receiver for Mt. Whitney rather than in a purchase and assumption transaction.