Booth, Judge,
delivered the opinion of the court:
The plaintiff is a South Dakota corporation, incorporated in 1906. Its charter was amended in 1908. Under its charter as amended it was authorized to engage in the following activities: “To buy and otherwise acquire, lease, sell, mortgage, and otherwise dispose of and deal in lands and timber, and interests therein; to manufacture and otherwise acquire, sell, and otherwise dispose of rosin, spirits of turpentine, *133 and all oilier wood and products and manufactures of wood; to buy, sell, and generally deal in merchandise of all kinds, all of which may be done anywhere in any State; and to exercise any and all powers conferred upon it by law”; and “to guarantee, buy, subscribe for, hold, sell, assign, transfer, hypothecate, pledge, and otherwise acquire and dispose of the stocks and bonds and other securities and evidences of debt or interest in other corporations, and while owner of such stock, may exercise all the rights, powers, and privileges of ownership, including the right to vote thereon, whether such other corporation or corporations be incorporated in this State or not; but only so long and to such extent as such acts or powers are not violative of law.” The corporation engaged extensively in its authorized activities until December 31, 1917. Large tracts of land were acquired in the States of Louisiana, Mississippi, Alabama, and Florida, of over 100,000 acres, most of the same being what is known as turpentine lands. The corporation maintained offices in Mobile, Ala.; Pensacola, Fla.; Gulfport, Miss.; and Pierre, S. Dak., having its principal office at New Orleans, La. The primary purpose of its incorporation was as a subsidiary of the Union Naval Stores Company, a southern corporation, engaged in producing and acquiring turpentine lands. The Union Naval Stores Company owned practically all the outstanding shares of stock of the plaintiff corporation, except for a few necessary shares to qualify officials. In 1913 the Union Naval Stores Company became financially involved, and finally in 1917 sold and transferred through a creditors’ committee all its assets, except its land and stock in the plaintiff company, to the New Orleans Naval Stores Company, a Louisiana corporation. Coincident with this transaction the Union Naval Stores Company and the plaintiff corporation resolved to liquidate, and in pursuance of such a resolution its activities were reduced to the necessities of liquidation. An office at Mobile, Ala., was continued by the president of the corporation, assisted by one stenographer, designated as secretary. All other officials were dispensed with; and sustained and continued efforts from that time on prevailed to realize the best possible price for the lands owned by the corporation. In the course of so *134 dealing some turpentine leases, or rights to extract turpentine from turpentine trees, were let; and of course elforts were made to get the best possible price for the fee to the lands owned. If offers for the lands or turpentine rights were considered inadequate they were refused and more advanced prices sought. The progress of disposition has been tedious and delayed. To dispose advantageously for creditors of a large acreage of turpentine lands at a time when the markets were depressed and demand therefor seriously curtailed has involved years of time and effort, and though the majority of the lands and rights have been sold there still remain holdings undisposed of.
The Commissioner of Internal Revenue acting under section 1000 of the revenue act of 1918 (40 Stat. 1057, 1126) levied and collected from the plaintiff for the years 1919, 1920, and 1921 capital-stock taxes to the amount of $1,335.05, and it is for the recovery of this amount with interest that this suit is brought. No jurisdictional issue is involved.
Section 1000 {supra) reads as follows :
“ Section 1000 (a). That on and after July 1, 1918, in lieu of the tax imposed by the first subdivision of section 407 of the revenue act of 1916, (1) every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 or so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000.”
The commissioner justified the collection of the tax on the theory that the established facts characterize the plaintiff as a corporation “ carrying on or doing business ” within the intent and meaning of the statute.
A mere repetition of the application of the taxing act to varying conditions of fact, as reflected in numerous opinions of the courts, will serve no especial purpose. It is sufficient to observe that the issue is one of fact within the guiding principles of settled law. As said in the case of Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516: “The fair test to be derived from a consideration' of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue *135 that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes.”
We think this case comes squarely within the exception which exempts a liquidating corporation from the capital-stock tax. The defendant predicates a contrary opinion upon the fact that at times offers for lands were refused, and negotiations continued to obtain more; that turpentine rights were sometimes let, and finally that the inherent nature of the plaintiff’s business was of necessity the doing of the very things it did do — i. e., buy and sell land and turpentine rights, etc., for profit. The charter rights of the corporation disclose its purposes, and among them was the purchase and sale of lands and turpentine rights; but the continuance of these activities as a going concern, promoted for the purpose of paying dividends to its stockholders, and doing the same things to acquire sufficient funds to pay creditors are distinctly different. One contemplates the present and the future, looks toward an indefinite continuance of business activities. The other is predicated in this case largely upon the misfortunes of the past, and looks exclusively to a disposition to the best advantage of what the corporation has and discontinuing business. No business enterprise could discontinue advantageously without putting forth its best efforts to realize the greatest possible sum for its assets, and the mere fact that in the course of such a proceeding profits may at times be realized, though in this case none are proven, does not designate the transaction as “ doing business ” w,ithin the intent of the taxing act.
The plaintiff has not acquired additional lands, it has not paid dividends to stockholders, and all it has done is to dispose, as rapidly as mature judgment and the state of the market would warrant, of all of its tangible investments. Judgment will be awarded the plaintiff. It is so ordered.
Moss, Judge; Geaham, Judge; and Campbell, Ghief Justice, concur.