## CLALLAM LUMBER CO. v. UNITED STATES (two cases).

District Court, W. D. Michigan, S. D.
February 28, 1929.

Nos. 3254, 3255.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for plaintiff.

E. J. Bowman, Dist. Atty., of Grand Rapids, Mich., for the United States.

RAYMOND, District Judge. The history and purposes of the Clallam Lumber Company prior to the taxable periods here under consideration are set forth in the opinion of June 3, 1927, in cases Nos. 3208 and 3209, 34 F.(2d) 944, wherein the nature of the cause of action and the parties are the same. Its purposes during the taxable periods involved in the present litigation are the same, unless a different purpose is to be inferred from the activities of the company hereinafter referred to. The question presented for determination differs only as to the taxable periods under consideration and the fact that the applicable statute is section 700 of title 7 of the Revenue Act of 1924 (43 Stat. 325).

The only important additional activities disclosed by the evidence during the taxable periods relate to a railroad construction contract and a logging contract. It appears that on February 18, 1924, the plaintiff entered into an agreement with Bloedell-Donovan Company for the construction and operation of a private logging railroad; the sole object of plaintiff in so doing being for the purpose of making its timber salable by providing transportation facilities to tidewater. Approximately 18 miles of railroad were constructed, one-half of the construction cost being paid by plaintiff. Plaintiff borrowed large sums of money to pay its share of construction costs, but at no time operated the road. It was not, so far as plaintiff was concerned, a commercial enterprise, but under the existing circumstances was the only apparent means by which plaintiff's timber lands could be sold and the company liquidated. It fairly appears from the evidence that, as the direct result of the railroad construction, all of the timber lands of plaintiff had been sold by June 16, 1927. Without it, the probabilities are that liquidation would have been deferred for a considerable number of years.

At substantially the same time that the railroad construction contract was entered into, plaintiff sold standing timber on 4,380.58 acres of its timber land to the Bloedell-Donovan Lumber Mills Company under logging contract, which required the vendee to cut and remove from the land all merchantable timber on or before March 31, 1930. Active logging operations thereunder were begun in April, 1925. These operations were carried on solely by the vendee; the activities of plaintiff being limited to such scaling and other supervision of operations as was deemed essential to protect its interests in the proceeds. It appears that all moneys received by the company were used to pay these expenses, to repay considerable loans made to enable it to pay its share of the railroad construction, and that the remainder has been distributed to stockholders. None of the proceeds was used for reinvestments from which profits might be derived. After payment of comparatively small expenses of supervision, the activities of the company were limited to the payment of its obligations and the receipt and distribution to its stockholders of the proceeds of the logging contract.

While the material periods for consideration in the present cases are from July 1, 1923, to June 30, 1924, and from July 1, 1924, to June 30, 1925, it seems clear that the activities of the company both prior and subsequent to those periods are proper for consideration, in determining the purpose of the activities of the company between those dates. During the period referred to the company did not buy or sell lands, did not operate the railroad, nor receive any rents or income therefrom. The enterprise, viewed as a whole, indicates a continuing and consistent purpose to convert capital assets into money for purposes of liquidation. This general purpose is well indicated by paragraph 17 of the construction contract, which reads:

"The Clallam Company is not now engaged in any logging operations, and it has no present intention of engaging in active logging operations on its own account, but plans rather to pursue the policy of selling its timber lands or disposing of the timber and forest products thereof under executory contract or contracts, whereby said lands will be logged by others. It is therefore agreed that the successor or successors of either party hereto and any person, firm, or corporation purchasing lands from or operating under contract with either party hereto, or its successors (which persons, firms, and corporations are in this contract described in general terms by the word "assigns") may be fully invested by such party to this contract, its successors and assigns, with all or any part of the rights in and to said main line railway, or branch lines, or the use thereof, which, by the terms of this agreement, are conferred upon such party to this agreement."

It seems to the court that the dominant purpose of these activities was the final disposal of capital assets, the distribution of their proceeds to stockholders, and the winding up of corporate activities. In each of the various cases in which the courts have held corporations subject to this tax, there appeared the obvious purpose of continuing the business indefinitely in the pursuit of profit. The companies were principally concerned with *profits*, not the *distribution of capital*, and were in some of the cases investing the gains. There is nothing in the activities of the Clallam Lumber Company to indicate "continued efforts in the pursuit of profit," or an intent to indulge in such efforts. All activities of the company in the instant cases were calculated to bring about and were reasonably directed toward liquidation. The direct testimony as to its purposes is consistently supported by all reasonable inferences to be drawn from its acts. If the essential purpose in joining in the construction of the railroad and in entering into the logging contract were to enable it to continue in business for an indefinite period, a different question would be presented. It seems, however, to be well established by the evidence that these activities were reasonably adapted for, and were in fact the only practical methods of, carrying out the primary purpose of incorporating, namely, to liquidate and distribute capital assets.

It has been frequently pointed out that in this class of cases each must rest upon its own particular facts. Applying to the facts as found in this case the test suggested in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516, 37 S. Ct. 201, 61 L. Ed. 460, it seems clear that plaintiff was not "doing business" during the taxable periods.

Proposed findings of fact and conclusions of law may be submitted for approval in each of the above cases. Judgment will then be entered for the amount of the taxes paid in each case.