Semmes, Bowen & Semmes, Ambler H. Moss and David R. Owen, all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and James P. Garland, Sp. Asst. to the Atty. Gen., for defendant.

## WASHINGTON, BALTIMORE & ANNAPOLIS REALTY CORPORATION v. MAGRUDER, Collector of Internal Revenue.

### No. 762.

District Court, D. Maryland.

Oct. 23, 1940.

COLEMAN, District Judge.

This is a suit for refund of capital stock taxes which the plaintiff has paid and now seeks to recover on the ground they have been erroneously collected. The taxes total $17,990, exclusive of interest, as follows: $6,000 for the fiscal year ending June 30, 1936; $5,985 for the fiscal year ending June 30, 1937; $3,000 for the fiscal year ending June 30, 1938, and $3,005 for the fiscal year ending June 30, 1939.

While four separate Revenue Acts are involved, the language with which we are here concerned, which is contained in the first of them, the Revenue Act of 1935, Section 105 (a), C. 829, 49 Stat. 1014, 1017, 26 U.S.C.A. Int.Rev.Acts, page 798, is not changed in the later acts,—tax periods and the amount of the tax only being changed. The above section of the 1935 Act is as follows: "For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domes-

tic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock." The later Acts are: Revenue Act of 1936, Sec. 401(a), 26 U.S.C.A. Int.Rev. Acts, page 943; Revenue Act of 1938, Sec. 601 (a), 26 U.S.C.A. Int.Rev.Acts, p. 1139; and 26 U.S.C.A. Int.Rev.Code, § 1200 (a).

It will thus be seen that the question under each of the statutes presented in the present case is this: Was the plaintiff "carrying on or doing business" for any part of the year in question? I conclude that the plaintiff was not.

There is no real dispute about the facts in the case,—merely as to the effect to be given to them in relation to the clause "carrying on or doing business" in the Revenue Acts. It appears that the plaintiff company was incorporated under the laws of Maryland in September, 1935, with broad charter powers, including the power to buy, sell, develop and otherwise deal in land; to loan money, to conduct a general brokerage business, deal in personal property, acquire other corporations, borrow money, issue bonds, buy stock, and to carry on any general business enterprise authorized under the laws of Maryland. Shortly after its incorporation the plaintiff received from a bondholders' protective committee, which had been operating, incident to the receivership and liquidation of the Washington, Baltimore & Annapolis Electric Railroad Company, properties formerly owned by that company. These properties had been acquired by this protective committee at a foreclosure sale, and consisted of certain rights of way, easements, terminal properties and other real estate located in Baltimore, Annapolis and Washington, as well as at other points along the line of the railroad.

While there is rather voluminous testimony as to the various activities of the corporation,—in fact all of its activities from its creation down to the present time are in evidence in the form of the entire minutes of stockholders and directors meetings of the corporation,—the following is believed to be an adequate, accurate résumé of what the corporation did during the years in question. In addition to the acquisition of the railroad's properties from the protective committee, as above explained, the company also acquired at the foreclosure sale the entire capital stock of a realty holding company which, in turn, owns the entire stock of another realty company, both of which were subsidiaries of the railroad company and performed no function other than that of holding legal title to a small part of the railroad company's real estate. The activities of the plaintiff ever since its incorporation have consisted of owning the properties above referred to, and selling them from time to time or making rentals under short term leases; paying taxes, insurance premiums, and other expenses incident to such ownership; paying the salaries of its officers (three in number, a president, vice-president and secretary-treasurer) which were at all times nominal, except on one or two occasions when additional compensation in the nature of bonuses was paid in connection with extensive sales; paying attorneys' fees and dividends, the total amount of the latter having been $75 per share, the book value of the company's stock as of December 31st, 1939, being $20.68 per share. The company has no office of its own and, besides its three officers, has had no one in its regular employment except an auditor,—also on a nominal annual salary.

The plaintiff's sole source of income has been the above mentioned properties held by it for liquidation, and approximately four-fifths of this income has been realized from sales of the real estate, and the remainder from rental of properties under short term leases. All net receipts, except reserves for contingencies, have been promptly distributed to stockholders. Pending distribution, the company's income has always been held by the plaintiff as cash in bank, and not reinvested or otherwise employed for profit. Likewise, the properties belonging to the two subsidiary companies were embraced in the same liquidation policy and the proceeds from their disposition were distributed to the plaintiff, the parent company, as dividends. The only other intercorporate relations consisted of a small service charge made by the plaintiff against the subsidiaries on one occasion, and of several small advances between them. That liquidation of the company's assets has been very materially accomplished is evidenced by the following figures, showing the real estate values carried on the company's balance sheet at the end of each of the designated calendar years: December 31, 1935, $419,250; December 31, 1936, $411,856; December 31, 1937, $401,798; December 31, 1938, $376,-798; and December 31, 1939, $122,007.61.

I reach the conclusion from the evidence in this case that all the activities of this company were solely related to the liquidation of these assets, and that for this reason its stock is exempt from the taxes in question. In short, while neither the Supreme Court nor the Circuit Court of Appeals for this Circuit has yet been called upon to determine whether a purely liquidating corporation of this precise character is exempt from the provisions of the acts in question, I believe the necessary inference from such decisions as do exist, interpreting the clause "carrying on or doing business", or synonymous terminology, require an affirmative answer to this question.

Some two years ago, I was called upon to construe the same language, but in relation to a state of facts quite different from those here presented; and while I likewise in that case exempted the taxpayer, and my decision was reversed by the Circuit Court of Appeals (United States v. Atlantic Coast Line Co., 4 Cir., 99 F.2d 6), I find no parallel in the two cases, nor anything in the appellate court's decision even broadly intimating the inclusion of a situation such as the present one. The following résumé statement of facts in the opinion of the Circuit Court of Appeals in that case, 99 F.2d 6, at page 9, as modified by the court's supplemental opinion, denying a petition for rehearing, 99 F.2d 932, at page 933, would seem to dispel any possible doubt on this score: "In the year 1914 the plaintiff had virtually concluded the activities for which it was organized and instead of remaining inactive, only collecting the income from its holdings and distributing to the stockholders their share of that income, it was active in seeking to make other profits. Some of its properties were sold and the proceeds reinvested; it purchased railroad securities, invested in the Polk Phosphate Company, a subsidiary and during the period in question loaned it money. In the year 1929 its charter was amended as to the powers given it to do business. If, as contended, it had remained practically dormant after the year 1914 the purchase of railroad securities, engaging in the phosphate business, buying and selling Government securities and lending money, all for a profit, were scarcely consistent with such a condition. The paying of an annual sum of approximately $12,000 to its officers and employees and the creation of a surplus of $17,000,000, from its profits are not evidences of a dormant corporation."

The latest decision of the Supreme Court most closely related to the present controversy is Edwards v. Chile Copper Company, 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678, where the statutes involved (Revenue Acts of 1916 and 1919) employed the same clause, i.e., "with respect to carrying on or doing business." There it was held that the tax was applicable to a corporation organized for the purpose of holding the stock of a mining corporation, and of issuing and selling bonds secured by pledge of the stock, and furnishing the proceeds from time to time to the other to enable it to carry on its work; other activities of the holding company consisting of maintaining an office, voting the shares, electing directors, lending the proceeds through a trust company on call loans when not needed for advances to the mining company, collecting interest, etc. At the close of its opinion the Court, through Mr. Justice Holmes, stated (270 U.S. at page 456, 46 S.Ct. at page 346, 70 L.Ed. 678): "The case is not governed by McCoach v. Minehill & Schuylkill Haven R. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, and United States v. Emery, Bird, Thayer Realty Company, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825. It is nearer to Von Baumbach v. Sargent Land Company, 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460."

We turn, then, first to the McCoach case, and we find that the Supreme Court there held that a railroad corporation which had leased its railroad to another company (the latter operating it exclusively), but which maintained its corporate existence, collected and distributed to its stockholders the rentals from the lessee and also dividends from investments, was not doing business within the meaning of the Corporation Tax Act of August 5, 1909, 36 Stat. 112, § 38, the pertinent words of which were "That every corporation * * * shall be subject to pay annually a special excise tax with respect to the *carrying on or doing business by such corporation * * *.*" (Italics inserted) In other words, the language was the same as we have in the statutes here under consideration. The closing part of the opinion in the McCoach case, rendered by Mr. Justice Pitney, contains the following statement, 228 U.S. at page 308, 33 S.Ct. at page 424, 57 L.Ed. 842: "The distinction is between (a) the receipt of income from outside property or-

investments by a company that is otherwise engaged in business; in which event the investment income may be added to the business income in order to arrive at the measure of the tax; and (b) the receipt of income from property or investments by a company that is not engaged in business except the business of owning the property, maintaining the investments, collecting the income, and dividing it among its stockholders. *In the former case the tax is payable; in the latter not.*" (Italics inserted).

I am satisfied that the facts in the present case fall clearly within the second class, as above set forth by the Supreme Court. The paragraph just quoted from the McCoach case was quoted in United States v. Atlantic Coast Line Company, supra; and for the reasons already given, namely, that the Circuit Court of Appeals expressly held that the company involved in that case was not solely a liquidating corporation, I do not think we can reasonably infer that there is anything intended by that decision contrary to the conclusion I now reach.

Each case of this kind must, of course, stand upon its own facts, and sometimes there are border-line facts. But not so in the present case. The Supreme Court has laid down the rule. It is more than dicta, it is part of the ratio decidendi of the McCoach case, and is a clear, simple guide.

Turning next to the case of United States v. Emery, Bird, Thayer Realty Company, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825, to which the Supreme Court also referred in the Edwards case, we find nothing contrary to the conclusion here reached. There the Court held that a realty corporation which did nothing but collect and distribute rent from a specified parcel of land was not "doing business" within the meaning of the Corporation Tax Law of 1909. The Court said (237 U.S. at page 32, 35 S. Ct. at page 501, 59 L.Ed. 825): "The line lies between Cedar Street Co. v. Park Realty Co. [Flint v. Stone Tracy Co.], 220 U.S. 107, 170, 31 S.Ct. 342, 55 L.Ed. 389, 421, Ann.Cas.1912B, 1312, and Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; the latter case being carried perhaps a little farther by McCoach v. Minehill Railway, 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842. We are of opinion that this case is governed by the last two, and that the decision was right. The question is rather what the corporation is doing than what it could do ([McCoach v. Minehill Railway] 228 U.S. 305, 306 [33 S.Ct. 419, 57 L.Ed. 842]), * * *."

It is believed unnecessary to dwell upon the facts in the other, earlier decisions referred to by the Supreme Court in its opinions from which we have just quoted, because their facts are different, and there is nothing in those decisions which can be fairly construed as opposing the conclusion here reached.

There is a wealth of decisions of the district and appellate courts in other Circuits on the question of what constitutes "doing business",—every case having of course different facts. It would unduly protract this opinion, and serve no useful purpose to attempt to review these decisions. Suffice it to note that the four following cases appear to bear striking similarity, on their facts, to the present case, because in each of them the corporation sought to be taxed was found to be engaged solely in the liquidation of its real estate holdings,— timber lands,—and in each case the corporation was declared exempt. Union Land & Timber Co. v. United States, 65 Ct.Cl. 129, a decision of the Court of Claims; and Clallam Lumber Co. v. United States (3 cases), 34 F.2d 944; 34 F.2d 947, and 1940 C.C.H. Tax Service, vol. 4, par. 9615, decisions of the District Court for the Western District of Michigan.

Lastly, we have not lost sight of the fact that Treasury Regulations 64 (1936 Edition), Article 43, promulgated under the Revenue Act of 1935, are expressly contrary to the conclusion here reached, and that these regulations have remained in substantially the same form throughout repeated re-enactments of the statutes, from which the Government argues that such administrative construction of the Act should be given the force and effect of law, on the theory that it has thus received implied legislative approval. But it is axiomatic that no administrative interpretation, regardless of the length of its continuance, can give to a statute a meaning which is contrary to binding judicial construction. So to hold would render the courts impotent in such matters. Courts "are not bound to accept administrative construction of a statute regardless of consequences, even when disclosed in the form of rulings." Estate of Sanford v. Commissioner, 308 U.S. 39, 52, 60 S.Ct. 51, 60, 84 L.Ed. 20. The words of the statute

here involved—"carrying on or doing business"—are not ambiguous or doubtful, in the sense that permits the application, blindly, of the rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration, will generally not be disturbed, Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457. The words before us have received extensive, definite judicial interpretation by the Supreme Court and by the Court of Appeals of this Circuit, which must be followed.

A judgment will be entered for the plaintiff, in accordance with this opinion.