MAGRUDER, Collector of Internal Revenue, v. WASHINGTON, BALTIMORE & ANNAPOLIS REALTY CORPORATION.

No. 4777.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

James P. Garland, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

Ambler H. Moss and David R. Owen, both of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought by the appellee, Washington, Baltimore and Annapolis Realty Corporation, herein referred to as the plaintiff, against the appellant, M. Hampton Magruder, Collector of Internal Revenue, herein referred to as the defendant, in the District Court of the United States for the District of Maryland, at Baltimore.

The object of the action was to recover capital stock taxes, together with interest, alleged to have been erroneously assessed and collected from the plaintiff for the fiscal years 1936, 1937, 1938, and 1939, in the total sum of $17,990.

After a hearing the judge below made findings of fact and conclusions of law and in October, 1940, rendered an opinion holding the plaintiff entitled to recover the amount claimed. Judgment was entered in favor of the plaintiff and the defendant brought this appeal.

The sole question to be considered is whether the plaintiff was "carrying on or doing business", during the years in question, within the meaning of the applicable Revenue Act.

The Revenue Act of 1935, Section 105(a), c. 829, 49 Stat. 1014, 26 U.S.C.A. Int.Rev. Acts, page 796, reads as follows:

"Capital Stock Tax

"(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

The pertinent Treasury Regulations are as follows:

"Treasury Regulations 64 (1936 Edition):

"Art. 41. Nature and Rate of Tax.—The tax is an excise tax imposed with respect to carrying on or doing business during a taxable year ending June 30, or any fractional part thereof. It is an excise tax upon the exercise of the privilege of doing business and not on the business itself * * *."

"Art. 42. Doing Business.—The term 'business' is very comprehensive and embraces whatever occupies the time, attention, or labor of men for profit. Accordingly, regardless of the nature of its activities, any corporation organized for profit and carrying out the purpose of its organization is doing business within the meaning of the Act. Similarly, even if not organized for profit, any corporation which nevertheless engages in activities ordinarily carried on for profit is also doing business. It is immaterial whether the activities result in a profit or a loss, whether the corporation has been successful in its enterprise, or that because of unfavorable business conditions, no operations are carried on for a particular period. No particular amount of business need be done, nor is it necessary that the business be continuous throughout the taxable year.

"The case is exceptional in which the activities of a corporation organized for profit do not amount to doing business within the meaning of the Act. Such a case is generally limited to one in which the corporation is not pursuing the ends for which organized, i. e., profit."

"Art. 43. Illustrations. (a) General.—In general 'doing business' includes any activities of a corporation whether it engages in—

"(1) buying, selling, manufacturing, developing, financing, speculating, or otherwise dealing in property of any description;

"(2) furnishing services of any character;

"(3) leasing or managing properties, collecting rents or royalties;

"(4) managing, financing, controlling or directing the operations, performing any function, or, in any other way, aiding or serving the general purposes of any affiliated or related company;

"(5) the orderly liquidation of property by negotiating sales from time to time as opportunity and judgment dictate and distributing the proceeds as liquidation is effected—for example, the liquidation of an estate, or of properties taken over from an-

other corporation, or of the shareholders' fractional interests in particular property; * * *."

"Art. 43. (b) Exceptions.—Ordinarily the exceptions to 'doing business' are restricted to limited activities of a corporation, such as—

"(2) the distribution of the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status in the case in which the corporation either was organized for, or has reduced its activities to, the mere owning and holding of specific property."

The provisions of the Revenue Act of 1935 are not changed in the later acts, for the years in question, these later Acts are: Revenue Act of 1936, § 401(a), 26 U.S.C.A. Internal Revenue Acts, page 943; Revenue Act of 1938, § 601(a), 26 U.S.C.A., Internal Revenue Acts, page 1139; and Internal Revenue Code, 1939, 26 U.S.C.A. Int.Rev.Code, § 1200(a).

There is no dispute as to the facts which were found by the judge below as follows: Plaintiff company was incorporated under the laws of Maryland in 1935, with broad charter powers, but was incorporated for the purpose of liquidating certain properties acquired from a Bondholders' Protective Committee, which had acquired the properties at a foreclosure sale of the Washington, Baltimore and Annapolis Electric Railroad Company. These properties consisted of certain rights of way, easements, and other properties located in Baltimore, Annapolis and Washington, as well as at other points along the line of the railroad. The properties acquired included all the capital stock of two subsidiary companies, which had been owned by the railroad while it was a going concern.

The bondholders had suffered a large loss and were endeavoring to dispose of the assets of the defunct railroad to the best advantage and the entire activities of the plaintiff company were directed to that end. There was no reinvestment of the money acquired from the sale of the properties and as fast as any money was received it was distributed to the bondholders (the stockholders of the plaintiff). Only such sums were retained as were necessary for current expenses. No reserve was maintained. In some instances leases were made of property but only for the ultimate purpose of a sale. In other words, the company was admittedly a purely liquidating corporation and was not endeavoring to operate for profit. Its activities were confined to the liquidation.

A case involving a similar question was before this Court in United States v. Atlantic Coast Line Company, 4 Cir., 99 F.2d 6, 8, opinion revised, United States v. Atlantic Coast Line Company, 4 Cir., 99 F.2d 932, certiorari denied, 306 U.S. 645, 59 S.Ct. 584, 83 L.Ed. 1044. There we reviewed the authorities and held that "very slight activity constitutes 'doing business' when the end is profit." There does not necessarily have to be a profit made, the result of doing business may be a loss, but the end sought must be to make a profit. The decisions of the Supreme Court all seem to consider this element of profit to be essential to the laying of the tax. Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Von Baumbach v. Sargent Land Company, 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460; Edwards v. Chile Copper Company, 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; United States v. Emery, Bird, Thayer Realty Company, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; McCoach v. Minehill & S. H. R. Company, 228 U.S. 295, 297, 33 S.Ct. 419, 424, 57 L.Ed. 842.

In the latter case the Court said: " * * * The distinction is between (a) the receipt of income from outside property or investments by a company that is otherwise engaged in business; in which event the investment income may be added to the business income in order to arrive at the measure of the tax; and (b) the receipt of income from property or investments by a company that is not engaged in business except the business of owning the property, maintaining the investments, collecting the income, and dividing it among its stockholders. In the former case the tax is payable; in the latter not."

The same holding as that made by the Supreme Court has been followed by the great majority of the subordinate federal courts.

It is contended on behalf of the defendant that while a corporation originally organized to do business for profit engaged in liquidating its own assets might not be liable for the tax, yet the plaintiff, organized solely for the purpose of liquidating another corporation, is liable. We are of the opinion that this contention is not a valid one.

The judge below in his able opinion, holding the tax not collectible as against

the plaintiff, distinguishes the instant case from the Atlantic Coast Line Company case, supra, and we are of the opinion that his reasoning is correct.

Here the end was not profit; there was no reinvestment of the money realized from the sale of properties, no financing of subsidiary companies and no building up of a large reserve. The plaintiff was solely a liquidating company and disbursed the money received to its stockholders as promptly as possible. The plaintiff was not "carrying on or doing business" within the plain meaning of the statute. The intention of Congress may not be arrived at by a mere surmise when the plain meaning of ordinary words used in a statute can lead only to one conclusion as to that intent.

A Regulation may not extend the scope of an Act of Congress and we are of the opinion that Section (5)(a) of Article 43, Treasury Regulations 64, is not in accord with the proper interpretation of the Revenue Act. As was well said by the Judge below, 35 F.Supp. 340, 343: "Courts 'are not bound to accept the administrative construction of a statute regardless of consequences, even when disclosed in the form of rulings.' Estate of Sanford v. Commissioner, 308 U.S. 39, 52 [60 S.Ct. 51, 84 L. Ed. 20]. The words of the statute here involved—'carrying on or doing business'— are not ambiguous or doubtful in the sense that permits the application, blindly, of the rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration, will generally not be disturbed (Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457)."

The judgment of the court below was correct and it is accordingly affirmed.

Affirmed.