16 Cal.App.2d 301 (1936)
In the Matter of UNION BUILDING AND LOAN ASSOCIATION OF SAN FRANCISCO, CALIFORNIA (a Building and Loan Association). L. C. DRAPEAU, as Building and Loan Commissioner, etc., Appellant,
v.
C. C. RUNDLE, Respondent.
Civ. No. 9888. 
California Court of Appeals. First Appellate District, Division One. 
August 28, 1936.
 McKee, Tasheira & Wahrhaftig and Walter Carrington for Appellant.
 George C. Hadley for Respondent.
 The Court.
 On and prior to October 18, 1934, L. C. Drapeau, State Building and Loan Commissioner, was engaged in liquidating the Union Building and Loan Association of San Francisco, having theretofore filed in the Superior Court of the City and County of San Francisco a declaration of his determination so to do under the provisions *303 of section 13.16 of the Building and Loan Association Act. (Stats. 1931, p. 483.) Said declaration was entitled "In the Matter of Union Building and Loan Association of San Francisco, California, a building and loan association," and numbered 239,806. On said day, upon prior petition therefor in accordance with the provisions of said section, an order was made by said court by which the commissioner was "authorized to sell to Carrol Newby for $6,750 par value in approved claims against said association, based upon investment certificates issued by said association, and to execute to said Carrol Newby a grant deed" to certain described real property. The order further provided "that the surrender value of said approved claims held by said Carrol Newby and offered as a consideration for the sale of said property is hereby fixed and determined to be the sum of $3,375.00."
 On January 25, 1935, C. C. Rundle filed in said superior court under the same title and number under which said order was made an affidavit, in which he alleged that by said order of October 18, 1934, the superior court had "decreed" that L. C. Drapeau, as Building and Loan Commissioner and liquidator of the Union Building and Loan Association of San Francisco, "should sell to Carrol Newby" the real property mentioned; that Carrol Newby was the agent of himself and his wife, Daisy M. Rundle, in the matter of said purchase; that he is now ready, able and willing to tender $6,750 par value in approved claims against said Union Building and Loan Association, and that L. C. Drapeau, as Building and Loan Commissioner, has failed and refused to "fulfill" said order. Thereupon an order to show cause was issued, which recited that the commissioner had failed and refused to comply with the order in question, and commanded him to show cause why he should not be directed to comply therewith. The commissioner duly appeared and showed cause, with the result that on February 18, 1935, the superior court made and entered an order to the effect that the commissioner "be and he is hereby directed to comply with said order of court heretofore made on the 18th day of October, 1934, in anywise affecting or pertaining to C. C. Rundle and Daisy M. Rundle, his wife, and/or Carrol Newby"; and that he "shall comply with this order on or before March 1, 1935". *304
 The commissioner has appealed from said last-mentioned order on several grounds, the first of which is that the superior court was without jurisdiction to make it.
 The particular powers of the superior court in relation to a building and loan association where the commissioner has taken possession thereof, or, having taken possession, is engaged in liquidating its affairs, are found in sections 13.13 and 13.16 of the Building and Loan Association Act. In the first-named section it is provided: "Whenever the commissioner shall be in possession of the business and assets of any association, and regardless of whether or not he shall be liquidating the affairs of such association, the commissioner may in his discretion (1) apply to the Superior Court ... for an order authorizing the commissioner to do any act or to execute any instrument not expressly authorized by this act, which order shall be given and made after a hearing on such notice as the court shall prescribe. ..." And section 13.16 provides in part as follows: "In liquidating the affairs of an association the commissioner shall have power to collect all moneys due to and claims of such association ... to release or convey all real or personal property pledged, hypothecated or transferred in trust as security for loans; to approve and pay all just and equitable claims; to commence and prosecute all actions and proceedings necessary to enforce liquidation; and on the order of the Superior Court of the county in which the principal office in this state of such association is located, given and made after a hearing on such notice as the court shall prescribe, to compound bad and doubtful debts or claims, and to sell, convey and transfer real and personal property. If a purchaser for any doubtful debt or claim cannot be obtained and it appears improbable that recovery thereon can be had, and that the costs of an action to enforce collection of the same would probably be lost, the court may direct that suit thereon need not be brought. For the purpose of executing and performing any of the powers and duties hereby conferred upon him the commissioner may, in the name of the association, or in his own name as commissioner, execute, acknowledge and deliver any and all deeds ... and other instruments necessary and proper to effectuate any sale of real or personal property or other transaction in the *305 liquidation of such association. ... In case any real property so sold is located in a county other than the county in which the application to the court for leave to sell the same is made, the commissioner shall cause a certified copy of the order authorizing or ratifying such sale to be recorded in the office of the recorder of the county in which such real property is located."
 "Upon determining to liquidate an association the commissioner shall cause an inventory of all the assets of such association to be made in duplicate, the original to be filed with the court and the duplicate in the office of the commissioner. He shall cause notice to be given by publication ... in some newspaper of general circulation ... to all persons having claims against it as creditors or investors or otherwise to present and file same and make legal proof thereof at a place and within the time to be designated in such publication ...; and within ten days after such first publication he shall cause a copy of such notice to be mailed to all persons whose names appear of record upon its books as creditors or investors; and upon the expiration of the time fixed for the presentation of claims the commissioner shall prepare or cause to be prepared in duplicate a full and complete schedule of all claims presented, specifying by classes those that have been approved and those that have been disapproved, and shall file the original with the court and the duplicate in the office of the commissioner. Not later than five days after the filing of such schedule with the court written notice shall be mailed to all claimants whose claims have been rejected. Action to enforce the payment of or to establish any rejected claim must be brought and service had within four months from and after the date of filing of the schedule of claims with the proper court; otherwise all such actions shall be barred forever. ..."
 "... From the net realization of assets ... the commissioner shall first pay all approved claims other than to shareholders and stockholders ... and thereafter he shall distribute and pay dividends in liquidation, first to the shareholders until their claims are fully paid or such assets or funds are exhausted. ... Upon the payment of a final dividend in liquidation the commissioner shall prepare and file with the court a full and final statement of the liquidation, including a summary of the receipts and disbursements, *306 and a duplicate thereof shall be filed in the office of the commissioner, and after due hearing and approval by the court the liquidation shall be deemed to be closed. ..."
 [1] It is apparent, we think, from a consideration of these excerpts from the act that the liquidation of a building and loan association is entrusted to the building and loan commissioner, who, however, is given the right with respect to certain of his acts, and is under a duty with respect to certain others, to seek the prior authorization of the superior court. He is required at the commencement of the liquidation to file with the court a declaration of his determination to liquidate. Thereafter he is required to file an inventory of assets, and later a schedule of all claims against the association, indicating thereon his approval or disapproval of any thereof. No action on the part of the court is invoked by the presentation and filing of any of these papers. They merely serve as a public judicial record of their contents. After the collection of the assets and the disposition thereof as directed by the act the commissioner is required to render an account, when for the first time, except in the instances hereinafter referred to, the court is called upon to act by holding a hearing on the account, when, if the account be approved, the liquidation is deemed closed.
 During the course of the liquidation, however, the action of the court may be invoked by the commissioner, as, when in doubt about how to proceed in a particular matter, he applies to the court for an authorization or direction, or when, if he desires to compound a bad or doubtful debt, or to transfer or convey property of the association, or to refrain from proceeding by suit to collect a debt, he is required to apply to the court for authorization so to do; and in case he deems it expedient to accept in payment of real property so contemplated to be sold approved claims against the association, he is required to formally apply to the court for its prior authorization, in which case the court fixes and determines the value at which such claims shall be accepted.
 And, since the court only acts upon the particular matter thus formally brought before it, it follows that its action is necessarily confined to that matter; and the fact that there is in the files of the court a proceeding entitled "In *307 the Matter of ... Building and Loan Association, number ..." affords no ground to a person claiming some right against the association or the commissioner to informally intervene in that proceeding to obtain relief, but he must resort to the appropriate action against the commissioner, in the same way that he is required by the specific terms of the act, in case of the rejection by the commissioner of his claim, to bring such action.
 A similar question was involved in the case of McPike v. Superior Court, 220 Cal. 254 [30 PaCal.2d 17], where it was held that the power conferred upon the superior court sitting in probate by section 578 of the Probate Code to authorize compromises between the personal representative and a third party could not be extended to include a power to compel the representative to carry out the compromise. In the course of its opinion the court said: "It is the respondent's theory that the power to make the order under attack is incidental to and to be implied from and necessary to carry out and make effective the power of the court to authorize the administrator to make the compromise. It is the petitioner's contention that the jurisdiction of the court goes no further than the express language of the statute. The language of the statute is permissive and not mandatory: 'A compromise may also be authorized by the court' ... The court is not given the power to 'direct' the making of compromises but only to 'authorize' them. It is not provided that compromises 'shall' or 'must be' made by the administrator when authorized by the court but that they 'may' be made. The internal evidence of the Probate Code indicates strongly that it was not the intention of the legislature to confer upon courts the power or jurisdiction to compel action by the administrator in the case of compromises."
 And in De Greayer v. Superior Court, 117 Cal. 640 [49 P. 983, 984, 59 Am.St.Rep. 220], the Supreme Court, in speaking of the powers granted to a guardian by the code (just as powers are granted to the commissioner by the Building and Loan Association Act) said: "And the powers there given and the duties imposed are such as in their essential nature are wholly at variance with the existence of the right in the court to take the custody and management of the estate out of the hands of the guardian into its *308 own. Under these provisions, as it was at the common law, it is the guardian, and not the court, who is made responsible for the proper administration of the trust. He it is to whose custody the property of the ward is entrusted, and to whom the law and the ward alike look for its safe return. In the performance of his duties he is, it is true, in certain respects under the control and supervision of the court appointing him; but this right of supervision does not, under our code, nor did it at the common law, carry the power to interfere in any such manner with the custody and general management of the property of the ward--except, of course, for conduct authorizing suspension of removal."
 [2] It is to be noted, too--although the respondent assumes otherwise--that an order authorizing the commissioner to compound a bad or doubtful debt, or to convey real property, or determining the value at which approved claims against the association may be accepted in payment thereof, places no compulsion on the commissioner to compound such debt, or convey such property, or, if conveyed, to accept approved claims in payment therefor at the valuation fixed. As to the last the effect of the order is that the commissioner may not accept approved claims at a lower valuation.
 [3] While the affidavit of Rundle alleged that the order of October 18, 1934, "decreed" that the commissioner "should sell" and that he failed and refused to fulfill it; and the order to show cause contained a recital to the effect that the commissioner had failed and refused to comply therewith, the allegation and recital are both erroneous, as we have already seen from our quotation of the exact terms of the order, which constituted no more than an authorization to do acts lying in the discretion of the commissioner. Such an order conferred no rights upon persons with whom the commissioner proposed to deal. Their rights must depend upon the contract, if any, into which they enter with him; and in case of a breach thereof by the commissioner their remedy would be against him in an ordinary action at law.
 [4] Applying these considerations to the instant case, the commissioner by the terms of the order of October 18, 1934, was merely "authorized to sell to Carrol Newby" certain real property. The latter, as the proposed vendee, acquired no rights under said order. A fortiori her alleged *309 principals, C. C. Rundle and Daisy M. Rundle, acquired none. [5] Moreover, before the filing by C. C. Rundle of his affidavit and request for an order to show cause that order by lapse of time had become final, and the order appealed from attempted to modify it. Referring to its specific terms the language is that the commissioner "be and he is hereby directed to comply with said order of court heretofore made on the 18th day of October, 1934, in anywise affecting or pertaining to C. C. Rundle and Daisy M. Rundle, his wife, and/or Carrol Newby." This language is, of course (except as to the Rundles), but a repetition of the previous order and created no change in the existing situation; but it is followed by the provision that the commissioner "shall comply with this order on or before March 1, 1935". The previous order containing no direction relative to the time of its execution, this addition constituted a modification thereof; and it having by lapse of time become final the superior court, in thus attempting to add to it, exceeded its power. We are, accordingly, of the opinion that not only did the court err in entertaining the application of Rundle for an order of any kind, but that the order which the court made and which forms the subject of this appeal was beyond its jurisdiction.
 The appellant presents other points in support of the appeal; but in view of the conclusion we have reached on the points discussed, it will be unnecessary to consider or decide them.
 The order appealed from is annulled. *310