[Civ. No. 11326. First Appellate District, Division Two.—February 14, 1940.]

THE PEOPLE, Respondent, v. FRIEND W. RICHARD-SON, as Superintendent of Banks, etc., Appellant.

John Gee Clock and Clock, McWhinney & Clock for Appellant.

U. S. Webb, former Attorney-General, Earl Warren, Attorney-General, and John L. Palstine, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—The People sued the superintendent of banks to recover a deficiency in the franchise tax paid as liquidator of the bank of San Pedro. From a judgment for plaintiff the defendant has appealed on a bill of exceptions.

The bank closed on March 3, 1933, and one of its vice-presidents was named conservator, pursuant to the terms of sections 135b et seq. of the Bank Act. (Stats. 1933, p. 319, Deering Gen. Laws, Act No. 652.) On December 17, 1934, the conservator was removed and the bank was placed in the hands of a liquidator. On March 15, 1934, the conservator filed an income tax return in which he deducted from the net income the sum of $65,000 representing the amount that had been written off on certain bonds upon the order of the superintendent of banks. This deduction was disallowed by the franchise tax commissioner and notice thereof given. The defendant filed no protest. Franchise taxes are to be rated on the basis of the net income of the previous year, hence, the controversy here relates to the proper tax to be paid by the bank in the year 1934 for the year subsequent to March 3, 1933, while the bank was in the hands of the conservator.

The appellant advances three grounds for reversal—that the franchise tax is chargeable only upon a bank "doing

business within the limits of this state'' (sec. 2, Franchise Tax Act, Deering Gen. Laws, Act 8488), and that the evidence is insufficient to support the finding that the bank was "doing business" in 1933; whether the bank was justified in deducting $65,000 from its net income because of bonds in default which were written down upon order of the superintendent of banks; and whether interest and penalties were chargeable during the period of operation by the conservator.

There was sufficient evidence to support the finding that the bank was engaged in business during its operation under the conservator. We refer to a portion of it. The doors were kept open as usual during all banking days and hours. Deposits were accepted under certain restrictions. There were checking accounts. Safety deposit boxes were available to customers throughout the period. Collections were made in the usual manner and upon the customary collection charges. Rentals of other offices in the bank's property were collected and handled in the usual manner. During this period the bank officials were attempting a reorganization and the activities above noted were carried on to hold the clientele until such reorganization might be effected.

Under the same heading the appellant argues that the finding is contrary to law because when a bank closes it ceases to do business and is in liquidation—that there is no difference in the relationship or situation between a conservator and a liquidator. The argument loses sight of the primary purpose of the emergency legislation of 1933. These sections of the Bank Act, 135b to 135f inclusive, were added in 1933 for the purpose of providing a means by which the bank assets might be conserved and the bank rehabilitated without complete liquidation. Provisions for the appointment, conduct, and removal of the conservator are found in these new sections of the code, all of which are designed to carry the bank along until, through reorganization or federal aid, it may be permitted to continue to conduct its business as before. Sections 136 et seq., which precede the above sections in time of enactment, provide generally that the superintendent of banks may take possession of the assets of a bank in financial distress and "shall proceed to liquidate

the affairs thereof". Cases holding that the powers and relations of a conservator are the same as those of a statutory receiver are of no assistance. None involves the statutory plan found in the Bank Act. The purpose of the statute is plain—that a conservator may be appointed when the superintendent of banks deems that the affairs of the bank are in such condition that, through temporary administrative control, its assets may be conserved and its affairs put in order so that it might continue its business without complete liquidation. The portions of the act relating to the appointment of a liquidator are made specially applicable to a case where the superintendent finds the affairs of the bank in such condition that they must be wound up, or "liquidated". ▇ Here the superintendent, acting under the authority of section 135c of the act, authorized the conservator to carry on the business of the bank with some limitations, and the trial court held that the bank had engaged in business through him. Under such circumstances there is no escape from the conclusion that the bank was liable for payment of the franchise tax for that period.

▇ As to the third question stated by appellant, the argument is that since the affairs of the bank were *in custodia legis* the judgment erroneously includes interest and penalties on the unpaid tax. The respondent replies that no penalties were imposed and that interest is permissible under the express terms of the Franchise Tax Act. Both parties cite and rely upon *Carpenter* v. *People's Mutual Life Ins. Co.*, 10 Cal. (2d) 299 [74 Pac. (2d) 508].) It does not aid either side. The case holds that a "gross receipts" tax levied under article XIII, section 14 of the Constitution, may carry penalties for delinquency, but since the parties conceded that the claim did not bear interest, the court did not decide whether interest was chargeable upon such a claim. Here the statute is plain. Section 24, subdivision (c), Deering's Gen. Laws, Act 8488, reads: "If the tax imposed by this act (whether determined by the commissioner or the taxpayer) or any installment or portion thereof is not paid on or before the date prescribed for its payment, there shall be collected as a part of the tax interest upon such unpaid amount at the rate of six per cent per year from the date prescribed for its payment until it is paid." The answer to appellant's inquiry as to interest is found in the statute;

hence, authorities from other jurisdictions condemning the practice of charging interest are not controlling. The matter of penalties is out of the question because no penalties were imposed.

■ The question relating to the write down of the defaulted bonds is more a question of accounting and of procedure than one of law. Under the provisions of the Franchise Tax Act the bank was required to pay an annual tax, "in lieu of all other taxes and licenses, state, county and municipal, upon the basis of its net income for the next preceding fiscal or calendar year". Under section 8 of the act certain deductions are permitted in measuring the net income. In preparing its return and computation of the net income for the calendar year, 1933, the San Pedro bank deducted $65,000 as "losses" or "bad debts" represented by bonds of three other corporations which had defaulted in the payment of interest. On December 30, 1933, upon the order of the superintendent of banks, the conservator "wrote down", or charged off on its books the sum mentioned in order to have the books show the "new market value" of the bonds as of that date. The tax commissioner refused to accept this write down and this is the meat of the present controversy. It is the position of appellant that the order of the superintendent of banks is alone sufficient to permit the deduction. The respondent contends that the deduction was improperly made for the year 1933, and that appellant has failed to follow the required procedure for an adjustment of the amount of tax due.

Section 8 of the Franchise Tax Act enumerates the deductions that may be made in the return of the net income upon which the amount of the franchise tax is reckoned. "Net income" is defined in section 7 as "the gross income less the deductions allowed". It is necessary then to find explicit deductions in the following sections to support a claim that any single deduction from the gross income should be made. The willingness of the bank to comply with the order of the superintendent to write down these bonds can have no bearing upon the statutory deductions which are allowable in estimating net income. Whether appellant claims the right under subdivision (d) or (e) of section 8 does not appear. If through the default in payment of interest the

bonds become "uncompensated losses . . . sustained during the income year", the burden of proof was on appellant to show both factors—the fact of loss and the time of loss. If appellant rests on subdivision (e)—that this is a debt "recoverable in part only"—the burden is again upon him to show what part if any is chargeable to the income year of 1933. To the contrary, the evidence discloses that all these "losses" occurred prior to the income year of 1933, and that these facts were known to an executive officer of the bank. They were not deductions which under the act could be made *in toto* on the income of 1933. A similar situation was considered in *Freeman-Dent-Sullivan Co.* v. *United States,* 21 Fed. Supp. 972, 977, where the court said: "Under the evidence in this case, if the debt under consideration was partially worthless in 1933, it was, under facts known to the taxpayer, partially worthless prior to 1933. It follows that partial worthlessness should have been ascertained prior to 1933. In other words, it was not ascertained in the sense of the statute within the taxable year. In any event, there is substantial evidence to support the finding of the commissioner that the part of the debt in question was not ascertained within the taxable year to be worthless."

 The trial court found that the defendant was estopped from questioning the amount of the tax due because of his failure to protest within sixty days after notice to him from the tax commissioner. The appellant criticizes the finding on the ground that the essential elements of an estoppel were not proved. This may be conceded, but a true estoppel is not necessary to support the judgment. Section 25 of the Franchise Tax Act provides a scheme for protest, hearing before the commissioner, and appeal to the state board of equalization. Definite times for these proceedings are specified, and, as in similar tax proceedings, time is of the essence, hence mandatory. Sixty days is given to file the original protest. "If no such protest is so filed *the amount* of the tax shall be final upon the expiration of said sixty-day period." It needs no judicial interpretation or construction to explain such plain language. No protest was filed at any time and *the amount* of the tax is no longer open to question.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1940.